UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
Conservation Law Foundation, Inc.   )
                                    )  Case No.
            Plaintiff,              )
                                    )  **COMPLAINT FOR DECLARATORY AND**
                                    )  **INJUNCTIVE RELIEF AND CIVIL**
      v.                            )  **PENALTIES**
                                    )
Paul Mattuchio, Inc.                )
                                    )  (Federal Water Pollution Control Act,
            Defendant.              )  33 U.S.C. §§ 1251 to 1387)
                                    )
                                    )
_____

Conservation Law Foundation, Inc. ("CLF") by and through its counsel, hereby alleges:

**INTRODUCTION**

1.      This is a civil suit brought under the citizen suit enforcement provisions of the

Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq. (the "Clean Water Act,"

"the Act," or "CWA").  Plaintiff seeks declaratory judgment, injunctive relief, and other

relief the Court deems appropriate to correct the Defendant's violations of the CWA,

which include continuous and ongoing unauthorized discharges of polluted stormwater

runoff from its Everett, Massachusetts scrap metal recycling facility into waters of the

United States and failure to comply with the EPA Multi-Sector General Permit for

Stormwater Discharges Associated With Industrial Activity ("MSGP" or "Multi-Sector

General Permit").

2.      The Mystic River watershed is home to approximately half a million people.  The watershed is also home to aquatic life, plants, and animal species that rely on the river, its tributaries, and adjacent wetlands for their survival.

3.      The CWA requires that states establish minimum water quality criteria and standards to protect human health and aquatic life.  CWA §§ 303-304, 33 U.S.C. §§ 1313-1314.

4.      Under the Massachusetts Surface Water Quality Standards, the Mystic River is "designated as a habitat for fish, other aquatic life and wildlife, including for their reproduction, migration, growth and other critical functions, and for primary and secondary contact recreation," and "shall have consistently good aesthetic value." 314 Mass. Code Regs. 4.05:4(b).

5.      The Massachusetts Surface Water Quality Standards establish minimum standards for a variety of pollutants, including but not limited to dissolved oxygen, temperature, pathogens (bacteria), solids, oil and grease, color and turbidity, taste and odor, nutrients, aesthetics, radioactivity, and toxic pollutants. 314 Mass. Code Regs. 4.05.

6.      The Massachusetts Department of Environmental Protection ("MassDEP") has found that levels of numerous pollutants including metals, oil and grease, organic enrichment/oxygen depletion, inorganic pollutants, pathogens, taste, color, odor, and ammonia consistently exceed the allowable levels under state water quality standards for the portion of the river between the Amelia Earhart Dam and Boston Harbor.[1]

---

[1] MassDEP, Integrated List of Waters (2008), *available at* http://www.mass.gov/dep/water/resources/08list2.pdf (last accessed Sept. 28, 2010). A Total Maximum Daily Load (TMDL) has not been established for the Mystic River. See EPA, Listed Water Information, Mystic River (2006), *available at*  http://oaspub.epa.gov/tmdl/enviro.control?p_list_id=MA71-03&p_cycle=2006 (last visited Sept. 28, 2010).

7.      Stormwater runoff is one of the major sources of contamination of the Mystic River and its tributaries.

8.      Stormwater discharges from Paul Mattuchio, Inc. contribute to the failure of the Mystic River and its tributary, the Island End River, to meet minimum water quality standards.

9.      Paul Mattuchio, Inc. engages in industrial activities such as material handling and storage, and vehicle traffic in and out of the site.  As precipitation comes into contact with pollutants generated by these activities, it picks up pollutants and is conveyed to nearby storm sewer systems and into the Mystic River and Island End River.

### JURISDICTION AND VENUE

10.     This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* (the "Clean Water Act" or the "CWA").  This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1) and 28 U.S.C. § 1331 (an action arising under the Constitution and laws of the United States).

11.     Plaintiff has complied with the statutory notice requirements under Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2.

12.     On July 14, 2010, Plaintiff provided notice of Defendant's violations of the Clean Water Act, and of its intention to file suit against Defendant by sending via certified mail a 60-day notice letter ("Notice Letter") to Paul Mattuchio, Inc. ("Defendant"), and to the owner and/or operator of Paul Mattuchio, Inc.: Paul Mattuchio, regarding their violations of the Clean Water Act and of CLF's intention to file suit against the Defendant.  33

U.S.C. § 1365(a)(1); 40 C.F.R. § 135.2(a)(1). A copy of the Notice Letter was also sent to

the registered agent for Paul Mattuchio, Inc., Paul Mattuchio, as required by 40 C.F.R. §

135.2(a)(1).

13.     A copy of the Notice Letter was sent to the Administrator of the United States

Environmental Protection Agency ("EPA"), the Administrator of EPA Region I, and the

Commissioner of the Massachusetts Department of Environmental Protection ("Mass

DEP") pursuant to the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1).

14.     A true and correct copy of CLF's Notice Letter is attached as Exhibit A, and is

incorporated by reference.

15.     More than sixty days has passed since the Notice Letter was served on Defendant

and the state and federal agencies.

16.     Neither the EPA nor the Commonwealth of Massachusetts has commenced or is

diligently prosecuting a court action to redress the violations alleged in this complaint.

33 U.S.C. § 1365(b)(1)(B).

17.     Venue is proper in the District Court of Massachusetts pursuant to Section

505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is

located within this judicial district.

**PARTIES**

18.     Plaintiff Conservation Law Foundation, Inc. (CLF) is a not-for-profit corporation

incorporated under the laws of the Commonwealth of Massachusetts and with a principal

place of business at 62 Summer Street, Boston, MA, 02110.

19.     CLF's mission includes the conservation and protection of the many uses of the

waters in and around the Mystic River watershed for, among other things, fishing,

recreation, boating, scenic and aesthetic enjoyment, and scientific purposes.  To further

these goals, CLF actively seeks federal and state agency implementation of the Clean

Water Act and, where necessary, directly initiates enforcement actions on behalf of itself

and its members.

20.      Members of CLF live on or near the Mystic River and its tributaries, and use and

enjoy the watershed for recreational, aesthetic, and scientific purposes.

21.      Discharges of pollutants by Defendant adversely affect CLF's members' use and

enjoyment of the Mystic River watershed.

22.      The interests of CLF's members have been, are being, and will continue to be

adversely affected by the Owner's and Operator's failure to comply with the Clean Water

Act and the MSGP.  The relief sought will redress the harms to Plaintiff by Defendant's

activities.  Continuing commission of the acts and omissions alleged above have and will

continue to irreparably harm Plaintiff's members, for which harm they have no plain,

speedy, or adequate remedy at law.

23.      Paul Mattuchio, Inc. is a corporation organized under the laws of the State of

Massachusetts.

24.      Paul Mattuchio is the President of Paul Mattuchio, Inc.

25.      Paul Mattuchio is the registered agent for Paul Mattuchio, Inc.

26.      Defendant Paul Mattuchio, Inc. operates a scrap metal recycling facility located at

366 Second Street, Everett, MA 02149 (the "Facility" or "Paul Mattuchio, Inc.").

27.      Paul Mattuchio, Inc. maintains, operates, and is responsible for numerous

industrial activities at its Second Street facility.

## STATUTORY BACKGROUND

### The Clean Water Act

28.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States from a "point source," unless the discharge complies with various enumerated sections of the CWA.  Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a valid National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

29.    "Point source" is defined broadly under § 502(14) of the CWA to include, "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." CWA § 502(14), 33 U.S.C. § 1362(14).

30.    Congress amended the Clean Water Act in 1987 to require that certain industrial facilities obtain stormwater discharge permits. Water Quality Act of 1987, Pub. L. No. 100-4, § 405, 101 Stat 7 (1987); see 55 Fed. Reg. 47990, 47991-93 (Nov. 16, 1990).

31.    Section 402 of the CWA requires that NPDES permits be issued for stormwater discharges associated with industrial activities.  CWA §§ 402(a)(1), 402(p)(2), 402(p)(3)(A), 402(p)(4), 402(p)(6); 33 U.S.C. §§ 1342(a)(1), 1342(p)(2), 1342(p)(3)(A), 1342(p)(4), 1342(p)(6).

32.    EPA regulations set forth at 40 C.F.R. § 122.26 required industrial dischargers to submit applications for permit coverage no later than October 1, 1992.  In September 1995, EPA issued a NPDES Storm Water Multi-Sector General Permit for Industrial

Activities ("1995 MSGP"). EPA re-issued the Multi-Sector General Permit for Industrial

Activities on October 30, 2000 ("2000 MSGP"), 65 Fed. Reg. 64746.  EPA re-issued the

Multi-Sector General Permit for Industrial Activities on September 29, 2008 ("2008

MSGP"), 73 Fed. Reg. 56572.

33.     In establishing these regulations, EPA cited abundant data showing the harmful

effects of stormwater runoff on rivers, streams, and coastal areas across the nation. In

particular, EPA found that runoff from industrial facilities contained elevated pollution

levels. 55 Fed. Reg. 47990, 47991 (Nov. 16, 1990).

34.     EPA has not delegated authority to the Commonwealth of Massachusetts to

implement a NPDES permitting program under the Clean Water Act.  Therefore, EPA is

the NPDES permitting authority in Massachusetts.

35.     The MSGP is issued by EPA pursuant to Sections 402(a) and 402(p) of the CWA

and regulates stormwater discharges from industrial facilities.  33 U.S.C. §§ 1342(a),

1342(p). In order to discharge stormwater lawfully, industrial dischargers must obtain

coverage under the MSGP and comply with its terms.

36.     Industrial dischargers are required to file a complete and accurate Notice of Intent

("NOI") to be covered by the MSGP.

37.     Industrial dischargers must also develop and implement a Stormwater Pollution

Prevention Plan ("SWPPP") prior to filing an NOI.  The SWPPP must identify and

evaluate sources of pollutants associated with industrial discharges from the facility, and

identify and implement effective Best Management Practices (BMPs) to control

pollutants in stormwater discharges in a manner that achieves the substantive

requirements of the permit.

38.     Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation."

39.     Such enforcement action under CWA Section 505(a) includes an action seeking remedies for unauthorized discharge under Section 301 of the CWA, 33 U.S.C § 1311, as well as for violation of a permit condition under Section 402 of the CWA, 33 U.S.C. § 1342, and Section 505(f) of the CWA, 33 U.S.C. § 1365(f).

40.     Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $27,500 per day per violation for all violations occurring before or on March 15, 2004, $32,500 per day per violation for all violations occurring after March 15, 2004, and $37,500 per day per violation for all violations occurring after January 12, 2009, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 – 19.4.

## FACTS

41.     Paul Mattuchio, Inc. is located at 366 Second Street, Everett, MA 02149.

42.     Paul Mattuchio, Inc. has operated and continues to operate a scrap metal recycling and processing facility at this location since at least January 1, 2008 ("the Facility" or "Paul Mattuchio, Inc. ").

43.     Stormwater from Paul Mattuchio, Inc. has discharged and continues to discharge into storm drains near Paul Mattuchio, Inc. including, but not limited to, the storm drains on Second Street, and into wetlands and ditches adjacent to the Facility which are

hydrologically connected to the Island End River.  These storm drains and other conveyances discharge into the Island End River and/or into the Mystic River.

44.     The Facility's primary activity falls under Standard Industrial Classification ("SIC") Code of 5093, the listed codes in Appendix D of the MSGP, and/or the activities listed in 40 C.F.R. § 122.26(b)(14).

45.     Paul Mattuchio, Inc. has engaged and continues to engage in the following industrial operations: assembling, breaking up, sorting, and wholesale distribution of ferrous metals, such as iron and steel; and wholesale distribution, sorting, and processing, of nonferrous metals, including but not limited to scrap, textile waste, and other recyclable materials, and shipping and receiving of materials.

46.     The sources of pollutants associated with the industrial activities at Paul Mattuchio, Inc. include: scrap metal ferrous and non-ferrous outdoor storage areas, parking areas, shipping and receiving areas, loading and unloading areas, maintenance areas, operations building, scrap metal and used appliance storage areas, piles of ferrous and non-ferrous turning and cutting, and on-site material handling equipment such as forklifts.

47.     Pollutants present in stormwater discharged from Paul Mattuchio, Inc. therefore include, but are not limited to: toxic metals, such as copper, iron, zinc, lead, cadmium, aluminum; petroleum products including oil, fuel, grease, transmission and brake fluids; nutrients; pathogens; trash; hydraulic fluids; acids and solvents; sediment and total suspended solids; pH-affecting substances; fugitive and other dust, dirt, and debris, and elevated temperature.

48.     The scrap metal piles at Paul Mattuchio, Inc. are uncovered, and therefore exposed to precipitation.

49.     Materials associated with industrial activities are exposed to the elements at Paul Mattuchio, Inc. including, but not limited to, miscellaneous metals and objects, industrial aluminum waste, grills, drums, barrels, aluminum ladders, wheelchairs, grocery carts, scrap auto parts, including oil pans and engines, furnaces contaminated with industrial pollutants, and appliances and/or parts of appliances such as refrigerators.  These materials contain or are contaminated with the pollutants listed at paragraph 47 above.

50.     Paul Mattuchio, Inc. has operated and continues to operate trucks and other vehicles that enter and exit the site via driveways or access roads.

51.     These vehicles transport pollutants including hydrocarbons (oil, grease, fuel), metals, total suspended solids, sediment, road salt (which in turn contains chlorides, sodium, and impurities), onto and off of the site and into the nearby storm drains and into the waters of the United States.

52.     During every measurable precipitation event and every instance of snowmelt, water flows onto and over exposed materials and accumulated pollutants at the Facility, generating stormwater runoff.

53.     Stormwater runoff from the Facility is contaminated with pollutants from the activities referenced at paragraphs 45-52.  Stormwater runoff from the Facility is conveyed to the City of Everett stormwater system and into the Island End and Mystic Rivers.  Stormwater runoff from the facility is not treated to remove the pollutants referenced at paragraph 47, above, before it is discharged into the Island End and Mystic Rivers.

54.     EPA considers precipitation above 0.1 inches during a 24 hour period a measurable precipitation event.  40 C.F.R. § 122.26(c)(i)(E)(6).

55.     A measurable precipitation event is sufficient to generate runoff from Paul Mattuchio, Inc.

56.     The MSGP specifically references snowmelt as a form of stormwater discharge that must be addressed by a discharger in its control measures. MSGP Part 2.1.2.1.

57.     Paul Mattuchio, Inc. has discharged and continues to discharge stormwater containing pollutants from the activities referenced at paragraphs 42-53 above to the City of Everett's storm drain system and into the Island End River.

58.     The Island End River flows into the Mystic River, which flows into Boston Harbor, which flows into the Atlantic Ocean, all of which are "waters of the United States," as defined in 40 C.F.R. § 122.2, and therefore, "navigable waters," as defined in 33 U.S.C. § 1362(7).

59.     Massachusetts' Impaired Waters List identifies the Mystic River and the Island End River as an impaired water body pursuant to Section 303(d) of the CWA, 33 U.S.C. § 1313(d).[2]

60.     Paul Mattuchio, Inc. has not met and continues to fail to meet the requirements to obtain authorization to discharge stormwater under the MSGP or another valid NPDES permit.

61.     Paul Mattuchio, Inc. has failed to install and implement control measures in to meet numeric and non-numeric effluent limitations in Part 2.1 of the MSGP.

---

[2] MassDEP, Integrated List of Waters (2008), *available at* http://www.mass.gov/dep/water/resources/08list2.pdf (last accessed Sept. 28, 2010); EPA, Listed Water Information, Mystic River (2006), *available at* http://oaspub.epa.gov/tmdl/enviro.control?p_list_id=MA71-03&p_cycle=2006 (last visited September 28, 2010).

62.     Paul Mattuchio, Inc. has failed to develop and implement a complete and accurate SWPPP that meets the requirements of MSGP Part 5, before submitting an NOI for permit coverage.

63.     Paul Mattuchio, Inc. has not posted a complete and accurate SWPPP on the Internet.

64.     Paul Mattuchio, Inc. has not filed an NOI.

65.     Paul Mattuchio, Inc. does not have an NOI to be covered under the MSGP posted publicly by EPA.[3]

66.     Paul Mattuchio, Inc. is not authorized to discharge under the MSGP until all requirements of MSGP Part 1.3 have been fulfilled and thirty days has passed since the EPA posts the NOI. MSGP Part 1.3, table 1-2.

## CLAIMS FOR RELIEF

### First Cause of Action:  Failure to Obtain and Comply with a Permit for Industrial Discharges

67.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

68.     Paul Mattuchio, Inc. is an industrial discharger with a primary industrial activity falling under a SIC Code of 5093 or another activity listed under Appendix D of the MSGP or 40 C.F.R. § 122.26(b)(14).

69.     Paul Mattuchio, Inc. is required to obtain permit coverage and comply with the MSGP pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

70.     Paul Mattuchio, Inc. has failed and continues to fail to obtain permit coverage and comply with the MSGP pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

---

[3] MSGP Part 1.3, table 1-2. As of September 28, 2010, Paul Mattuchio, Inc. 's NOI is not posted on EPA's website, www.epa.gov/npdes/noisearch.

71.     Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc. has not obtained permit coverage and complied fully with the MSGP is a separate and distinct violation of Section 402 of the CWA, 33 U.S.C. § 1342.

**Second Cause of Action:  Unauthorized Discharge of Pollutants Into Waters of the United States**

72.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

73.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from any "point source" to waters of the United States, except for discharges in compliance with a NPDES permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

74.     In order to be authorized to discharge lawfully under the MSGP, a facility must meet requirements set forth in Part 1.3.1 of the MSGP.  These include:

    (a)  meeting the eligibility requirements in Part 1.1 of the MSGP;

    (b)  selecting, designing, installing, and implementing control measures in accordance with MSGP Part 2.1;

    (c)  developing a complete and accurate SWPPP according to MSGP Part 5; and

    (d)  filing a complete and accurate NOI to seek coverage under the MSGP.

75.     Paul Mattuchio, Inc. is an industrial discharger with a primary SIC Code of 5093 and/or another activity listed under Appendix D of the MSGP or 40 C.F.R. § 122.26(b)(14),which means it is obligated to apply for coverage under the MSGP or other legal authorization.

76.     Paul Mattuchio, Inc.'s industrial activities have resulted and continue to result in "stormwater discharge associated with industrial activity" within the meaning of 40

C.F.R. § 122.26(b)(14) into the Everett, MA stormwater system and into the Island End River and the Mystic River on every day of precipitation greater than 0.1 inches and every instance of snowmelt.

77.     Paul Mattuchio, Inc.'s discharges of stormwater associated with industrial activity ("industrial stormwater discharges") are discharges of pollutants within the meaning of 33 U.S.C. § 1362(12).  Paul Mattuchio, Inc.'s industrial stormwater discharges are "point source" discharges into waters of the U.S.

78.     Paul Mattuchio, Inc.'s industrial stormwater discharges have caused and continue to cause discharges of pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

79.     Since at least January 1, 2008, Paul Mattuchio, Inc. has discharged and continues to discharge industrial stormwater without authorization to discharge under a valid NPDES permit as required by Section 301(a), 33 U.S.C. § 1311(a), and Section 402(p)(2)(B) of the CWA, 33 U.S.C. § 1342(p)(2)(B).

80.     Since at least January 1, 2008, Paul Mattuchio, Inc. has discharged and continues to discharge pollutants to an impaired waterbody, causing or contributing to an exceedance of water quality standards.

81.     Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc. has discharged and continues to discharge industrial stormwater without authorization under a valid NPDES permit constitutes a distinct violation of Section 301(a), 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

**Third Cause of Action:  Failure to Submit to EPA a Complete Notice of Intent to be Covered under the MSGP in Violation of the MSGP and the Clean Water Act. (Violations of  MSGP Part 1.3.1)**

82.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

83.     Industrial dischargers are required to submit to EPA a complete and accurate NOI to be covered under the MSGP pursuant to MSGP Part 1.3.1.

84.     Paul Mattuchio, Inc. has failed and continues to fail to submit to EPA a complete and accurate NOI to be covered under the MSGP pursuant to MSGP Part 1.3.1.

85.     Paul Mattuchio, Inc. has failed and continues to fail to develop and implement a complete and accurate SWPPP meeting the requirements of MSGP Part 5 before submitting an NOI for coverage.

86.     Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc. has not filed a complete and accurate NOI, is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Fourth Cause of Action: Failure to Comply with MSGP Requirements for New Dischargers to an "Impaired Water" (Violations of MSGP Part 1.1.4.7)**

87.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

88.     Paul Mattuchio, Inc. is a new discharger under the MSGP as it has not previously sought coverage under the previous MSGP permits EPA has issued.

89.     The Mystic River is identified as impaired due to various pollutants, including metals, oil and grease, organic enrichment/oxygen depletion, inorganics, pathogens, toxic organics, taste, color, odor, and ammonia.

90.     Paul Mattuchio, Inc. has discharged and continues to discharge stormwater contaminated with some of these pollutants, such as metals, oil, grease, solvents, nutrients, pathogens, dissolved solids, trash, and other pollutants associated with Paul Mattuchio, Inc.'s operations, through stormwater contact with the Facility's industrial discharges.

91.     New dischargers to impaired waters are required to take one of the following actions prior to obtaining permit coverage:

(a)  prevent all exposure of pollutants for which a water body is impaired pursuant to MSGP Part 1.1.4.7(a); or

(b)  document that the pollutants for which a water body is impaired are not present at the facility and retain documentation for this finding with a SWPPP pursuant to MSGP Part 1.1.4.7(b); or

(c)  provide EPA Region 1 with data to support a showing that the discharge is not expected to cause or contribute to an exceedance of a water quality standard by showing that the discharge of the pollutant for which the water body is impaired will meet instream water quality criteria at the point of discharge to the waterbody and retain such data in a SWPPP pursuant to MSGP Part 1.1.4.7(b)(i).

92.     Paul Mattuchio, Inc. has failed to and continues to fail to prevent all exposure of pollutants for which the Mystic River is impaired pursuant to MSGP Part 1.1.4.7(a).

93.     Paul Mattuchio, Inc. has failed and continues to fail to document that the pollutants for which the Mystic River is impaired are not present at Paul Mattuchio, Inc.,

nor has Paul Mattuchio, Inc. retained documentation for this finding with a SWPPP

pursuant to MSGP Part 1.1.4.7(c).

94.     Paul Mattuchio, Inc. has not provided and continues to fail to provide EPA

Region 1 with data supporting a showing that the discharge is not expected to cause or

contribute to an exceedance of a water quality standard by showing that the discharge of

the pollutant for which the Mystic River is impaired will meet instream water quality

criteria at the point of discharge to the Mystic River nor has Paul Mattuchio, Inc. retained

such data in a SWPPP pursuant to MSGP Part 1.1.4.7(c)(i).

95.     Therefore, Paul Mattuchio, Inc. has not met and continues to fail to meet the

permit requirements applicable to new dischargers.

96.     Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc.

has failed and continues to fail to comply with the MSGP requirements for new

dischargers into impaired waters, constitutes a separate and distinct violation of Section

301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and Section 402 of the Clean Water

Act, 33 U.S.C. § 1342.

**Fifth Cause of Action:  Failure to Develop and Implement a SWPPP in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 5)**

97.     Plaintiff incorporates the allegations contained in the above paragraphs as though

fully set forth herein.

98.     Industrial dischargers are required to develop and implement a complete and

accurate SWPPP and to retain a copy of the SWPPP at the facility at all times together

with all other required inspection, monitoring, and certification records that demonstrate

full compliance with the Permit, pursuant to MSGP Part 5.

99.     Paul Mattuchio, Inc. has failed and continues to fail to develop and implement a complete and accurate SWPPP prior to submitting an NOI for coverage.

100.    Paul Mattuchio, Inc.'s ongoing failure to develop and implement a complete and accurate SWPPP is evidenced by, *inter alia*, the outdoor uncovered storage of industrial materials, including waste materials, without appropriate BMPs; the continued exposure of significant quantities of industrial material to stormwater flows; the failure to either treat stormwater prior to discharge or to implement effective containment practices; and the continued discharge of stormwater pollutants.

101.    Paul Mattuchio, Inc. has failed and continues to fail to retain a copy of a complete and accurate SWPPP and all other required documentation at the facility at all times pursuant to MSGP Part 5.4.

102.    Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc. has failed and continues to fail to develop and fully implement a complete and accurate SWPPP for Paul Mattuchio, Inc. and to keep such SWPPP on file at the Facility together with all other required documentation, is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Sixth Cause of Action:  Failure to Take Control Measures and Meet Water Quality-Based Effluent Limitations in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 2)**

103.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

104.    Industrial dischargers are required to take control measures and meet water quality-based effluent limitations pursuant to MSGP Part 2.

105.    Industrial dischargers must "minimize" exposure of manufacturing, processing, and material storage areas to precipitation, snowmelt, and runoff meaning "reduce and/or eliminate" such exposures "to the extent achievable using control measures, including best management practices, that are technologically available and economically practicable and achievable in light of best industry practice," pursuant to MSGP Part 2.1.

106.    The control measures must meet the standards set by Best Practicable Control Technology/Best Available Technology Economically Achievable/Best Conventional Pollutant Control Technology (BPT/BAT/BCT) standards and must comply with all non-numeric effluent limits set forth at Part 2.1.2 of the MSGP, including requirements for good housekeeping, maintenance, spill prevention and response, erosion and sediment control, salt storage, employee training, prevention of discharge of waste, garbage, and floatable debris to receiving waters, eliminating non-stormwater discharges, and dust generation and vehicle tracking of industrial materials. MSGP Part 2.1.1.

107.    The control measures must "divert, infiltrate, reuse, contain, or otherwise reduce stormwater runoff, to minimize pollutants in your facility's discharges." MSGP Part 2.1.2.6.

108.    Industrial dischargers must select, design, install, and implement the control measures referenced in paragraphs 103-106 above in accordance with good engineering practices and manufacturer's specifications.  MSGP Part 2.1. The control measures must be modified if the facility finds that it is not achieving the effect of minimizing pollutant discharges. MSGP Part 2.1.

109.   Paul Mattuchio, Inc. has operated and continues to operate in a manner that exposes industrial materials to pollutants without implementing BMPs that achieve the BPT/BAT/BCT standard and comply with all non-numeric effluent limitations.

110.   Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc. has operated and continues to operate without implementing BMPs that achieve the BPT/BAT/BCT standard, and comply with all non-numeric effluent limitations pursuant to MSGP Part 2.1, is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

111.   Discharges from the facility must be controlled as necessary to meet applicable water quality standards. MSGP Part 2.2.1.

112.   Since at least January 1, 2008, Paul Mattuchio, Inc. has discharged pollutants listed at paragraph 47, above, into the Mystic River and the Island End River. MassDEP has listed these rivers as impaired for metals, oil and grease, organic enrichment/oxygen depletion, inorganics, pathogens, toxic organics, taste, color, odor, and ammonia.

113.   Paul Mattuchio, Inc.'s discharges are not controlled as necessary to meet applicable water quality standards.

114.   Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc. has failed to implement control measures and meet water-quality based effluent limitations in violation of the MSGP is a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

**Seventh Cause of Action:  Failure to Conduct Facility Inspections in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 4)**

115.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

116.    Industrial dischargers are required to conduct and document routine facility inspections pursuant to MSGP Part 4.1, in no cases less frequently than once per quarter.

117.    Paul Mattuchio, Inc. has failed and continues to fail to conduct comprehensive routine facility inspections pursuant to MSGP Part 4.1.

118.    Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc. has operated and continues to operate without conducting routine facility inspections pursuant to MSGP Part 4.1 is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

119.    Industrial dischargers are required to collect a wet-weather stormwater sample from each outfall at the facility once each quarter throughout the permit term, to assess such sample for the presence of indicators of stormwater pollution, and to retain documentation of such visual assessments, pursuant to MSGP Part 4.2.

120.    Paul Mattuchio, Inc. has failed and continues to fail to collect a wet-weather stormwater sample from each outfall, to inspect the sample for indicators of pollution, and to document such assessment, pursuant to MSGP Part 4.2.

121.    Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc. has operated and continues to operate without conducting required wet-weather sampling and visual assessment and retaining documentation pursuant to MSGP Part 4.2 is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

122.    Industrial dischargers are required to conduct annual comprehensive site inspections, to document such annual inspections, and to submit the results of such inspections to EPA, pursuant to MSGP Part 4.3.

123.    Paul Mattuchio, Inc. has failed and continues to fail to conduct and document such comprehensive site inspections and to submit the results of such inspections to EPA pursuant to MSGP Part 4.3.

124.    Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc. has operated and continues to operate without conducting and documenting the required comprehensive site inspection and submitting such documentation to EPA pursuant to MSGP Part 4.3 is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Eighth Cause of Action:  Failure to Comply with the Required Monitoring and Sampling Procedures in Violation of the MSGP and the Clean Water Act. (Violations of MSGP Part 6)**

125.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

126.    Industrial dischargers are required to comply with the required monitoring and sampling procedures pursuant to MSGP Part 6.

127.    Paul Mattuchio, Inc. has failed and continues to fail to comply with the required benchmark monitoring and sampling procedures pursuant to MSGP Part 6.2.1.  As a result, Paul Mattuchio, Inc. has also failed to take any required review of control measures, additional monitoring, and corrective actions that would have been triggered by benchmark monitoring.

128.     Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc. has operated and continues to operate without complying with the required benchmark monitoring and sampling procedures pursuant to MSGP Part 6 is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

129.     Paul Mattuchio, Inc. has failed and continues to fail to comply with the required impaired waters monitoring pursuant to MSGP Part 6.2.4.

130.     Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc. has failed and continues to fail to comply with the required impaired waters monitoring pursuant to MSGP Part 6.2.4 is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311, and Section 402 of the CWA, 33 U.S.C. § 1342.

**Ninth Cause of Action:  Failure to Carry Out the Required Reporting and
Recordkeeping in Violation of the MSGP and the Clean Water Act.
(Violations of MSGP Part 7)**

131.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

132.     Industrial dischargers are required to carry out the required reporting and recordkeeping pursuant to MSGP Part 7.

133.     Reporting and recordkeeping requirements under the MSGP Part 7 include:

(a)  Reporting monitoring data to EPA pursuant to MSGP Part 7.1;

(b)  Preparing and submitting an annual report containing specified information to EPA, pursuant to MSGP Part 7.2;

(c) Submitting an exceedance report to EPA if follow-up monitoring after a benchmark exceedance exceeds a numeric effluent limit, pursuant to MSGP Part 7.3;

(d) Completing additional reporting and submitting such reports to the appropriate EPA office, including: reporting of any noncompliance within the specified time period; notifying EPA as soon as the facility has knowledge of a leak, spill, or other release containing oil or a hazardous substance in a reportable quantity; notifying EPA of certain planned changes to the facility; submitting a complete and accurate NOI in the event of transfer of ownership and operation; and correcting or supplementing facts in the facility's NOI or any other report, pursuant to MSGP Part 7.4; and

(e) Retaining copies of the SWPPP including any modifications, along with additional documentation required under Part 5.4, all reports and certifications required by the permit, monitoring data, and records of data used to complete the NOI, for a period of at least 3 years from the date on which permit coverage expires or is terminated. MSGP Part 7.5.

134.   Paul Mattuchio, Inc. has failed and continues to fail to carry out the required reporting and recordkeeping pursuant to MSGP Part 7.

135.   Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc. has operated and continues to operate without carrying out the required reporting and recordkeeping pursuant to MSGP Part 7, is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Tenth Cause of Action:  Failure to Comply with the Requirements of MSGP Subpart N-Scrap Recycling and Waste Recycling Facilities in Violation of the MSGP and the Clean Water Act.  (Violations of MSGP Part 8 Subpart N)**

136.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

137.    Scrap recycling and waste recycling facilities are required to comply with the requirements of MSGP Part 8 Subpart N-Scrap Recycling and Waste Recycling Facilities ("MSGP Part 8 Subpart-N").  Such requirements include:

(a)  implementing additional technology-based effluent limitations (MSGP Part 8.N.3);

(b)  meeting additional SWPPP and inspection requirements (MSGP Part 8.N.4 and Part 8.N.5);

(c)  monitoring stormwater discharges for compliance with the benchmark pollutant limitations applicable specifically to metal recycling facilities (MSGP Part 8.N.6); and

(d)  minimizing contact of stormwater runoff with stockpiled materials, processed materials and non-recyclable wastes through various control measures such as permanent or semi-permanent covers, oil and water separators, sumps and dry absorbents for areas where potential sources of residual fluids are stockpiled (MSGP Part 8.N.3.1.2).

138.    Paul Mattuchio, Inc. has not implemented and continues to fail to implement additional technology-based effluent limitations pursuant to MSGP Part 8 Subpart-N, pursuant to MSGP Part 8.N.3.

139.    Paul Mattuchio, Inc. has not met and continues to fail to meet additional SWPPP requirements pursuant to MSGP Part 8 Subpart-N, pursuant to MSGP Part 8.N.4.

140.    Paul Mattuchio, Inc. has not met the additional inspection requirements of the MSGP Part 8 Subpart-N, pursuant to MSGP Part 8.N.5.

141.    Paul Mattuchio, Inc. has failed and continues to fail to monitor stormwater discharges for compliance with the benchmark pollutant limitations applicable specifically to metal recycling facilities of the MSGP Part 8 Subpart-N, pursuant to MSGP Part 8.N.6.

142.    Paul Mattuchio, Inc. has failed and continues to fail to minimize contact of stormwater runoff with stockpiled materials, processed materials, and non-recyclable wastes through various control measures such as permanent or semi-permanent covers, oil and water separators, sumps and dry absorbents for areas where potential sources of residual fluids are stockpiled pursuant to MSGP Subpart-N, pursuant to MSGP Part 8.N.3.1.2.

143.    Each and every day since at least January 1, 2008 on which Paul Mattuchio, Inc. has operated and continues to operate without carrying out required sector-specific activities pursuant to MSGP Part 8 is a separate and distinct violation of the MSGP and Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

144.    Paul Mattuchio, Inc.'s violations of the CWA are on-going and continuous, are capable of repetition, and result from the same underlying and inadequately resolved causes.

**RELIEF REQUESTED**

145.    Wherefore, Plaintiff respectfully requests that this Court grant the following

relief:

      (a)      Declare Defendant to have violated and to be in violation of Section

                301(a) of the CWA, 33 U.S.C. § 1311(a), for its unlawful and

                unauthorized discharges of pollutants;

      (b)      Declare Defendant to have violated and to be in violation of Section 402

                of the CWA, 33 U.S.C. § 1342, for its failure to seek coverage under the

                Multi-Sector General Permit and failure to comply with all applicable

                requirements of the MSGP;

      (c)      Enjoin Defendant from discharging pollutants from Paul Mattuchio, Inc.

                and to the surface waters surrounding and downstream from Paul

                Mattuchio, Inc., except as authorized by and in compliance with a

                National Pollutant Discharge Elimination Permit;

      (d)      Order Defendant to comply fully and immediately with all applicable

                requirements of the Multi-Sector General Permit;

      (e)      Order Defendant to pay civil penalties of $27,500 per day per violation for

                all violations occurring before or on March 15, 2004, and $32,500 per day

                per violation for all violations occurring after March 15, 2004, and

                $37,500 per day per violation for all violations occurring after January 12,

                2009, for each violation of the CWA pursuant to Sections 309(d) and

                505(a) of the CWA, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1

                – 19.4;

(f)     Order Defendant to take appropriate actions to restore the quality of the

waters impaired by its discharges and to remedy harm to the surrounding

ecosystems and communities affected by their noncompliance with the

CWA;

(g)     Award Plaintiff's costs (including reasonable investigative, attorney,

witness, and consultant fees) as permitted by Section 505(d) of the CWA,

33 U.S.C. § 1365(d); and

(h)     Award any such other and further relief as this Court may deem

appropriate.


Dated:  September 29, 2010                    Respectfully submitted,


                                              /s/Cynthia E. Liebman (BBO #665528)
                                              Conservation Law Foundation
                                              62 Summer Street
                                              Boston, MA 02110
                                              Phone: 617-350-0990 x 744
                                              Fax: 617-350-4030


                                              Sheryl Dickey
                                              Vermont Law School
                                              Environmental and Natural Resources
                                              Law Clinic
                                              164 Chelsea Street
                                              P.O. Box 96
                                              South Royalton, VT 05068
                                              Phone: 802-831-1626
                                              Fax: 802-831-1631

                                              Attorneys for Plaintiff
                                              CONSERVATION LAW FOUNDATION